# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GIAVANA CARRILLO,<br><br>Defendant. | 8:18CR177<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Findings and Recommendation (F&R), ECF No. 38, issued by Magistrate Judge Susan M. Bazis. The Magistrate Judge recommended that the Motion to Suppress filed by the Defendant Giavana Carrillo, ECF No. 20, be denied. Carrillo filed an Objection to the F&R, ECF No. 43, as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded to the Objection, ECF No. 45, and incorporated its previous arguments. For the reasons set forth below, the F&R will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

Carrillo is charged with being a felon in possession in of ammunition, and she seeks to suppress any evidence obtained by law enforcement during a traffic stop on May 6, 2018. She objects to the Magistrate Judge's credibility findings regarding Omaha Police Officer Christopher Rich, but otherwise the facts are not in dispute. For the reasons stated below, the Court adopts the Magistrate Judge's factual findings and provides the following by way of summary:

On May 6, 2018, Officer Rich and his partner, Officer Judkins, were conducting routine patrols in a marked cruiser. While traveling northbound on Park Avenue in

Omaha, they observed a vehicle traveling southbound, towards their cruiser. Officer Rich testified that as the southbound vehicle passed them, he noticed that the two brake lights on the bottom of the vehicle were functioning, but the top-mount brake light, which was centered between the other brake lights and positioned above the trunk of the vehicle, was not working. Officer Rich said he could see the non-functioning brake light in his side view mirror because his cruiser was traveling at a slow rate of speed.

Officer Rich made a U-turn and came up behind the vehicle to make sure the brake light was out. Once he confirmed it was not working, he initiated a traffic stop. He testified that he was not on the lookout for Carrillo's vehicle at the time of the traffic stop and he did not intend to stop the vehicle until he observed the non-functioning brake light. Carrillo was driving the vehicle, and Officer Rich verified her identify and discovered that she had two outstanding warrants and her license was suspended. He took Carrillo into custody and discovered ammunition in her purse.

Carrillo moved to suppress the evidence from the stop, arguing that Officer Rich did not have probable cause to stop her vehicle because Nebraska law does not require all break lights to be functional. The Magistrate Judge concluded that Officer Rich's interpretation of Nebraska law was objectively reasonable and he had probable cause to stop the vehicle.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a), the Court shall make a *de novo* review of the portions of the Magistrate's Findings and Recommendation to which objections have been made. The Court may accept, reject, or modify, in whole or in part,

2

the Magistrate Judge's findings and recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

**DISCUSSION**

Carrillo objects to the Magistrate Judge's finding that Officer Rich's testimony was credible. She also argues that Officer Rich's interpretation of Nebraska traffic law was objectively unreasonable, and therefore he lacked probable cause to stop her vehicle. The record supports the Magistrate Judge's recommendations as to each objection and, for the reasons stated below, the Court will adopt the F&R.

**I. Officer Credibility**

Under de novo review, "once a party makes a proper objection to a magistrate's finding, including a credibility finding, the district court must make a de novo determination of that finding." *Taylor v. Farrier*, 910 F.2d 518, 521 (8th Cir. 1990). The Court must determine whether Officer Rich's testimony was "so implausible that a reasonable fact-finder would not credit the testimony." *United States v. Portmann*, 207 F.3d 1032, 1033 (8th Cir. 2000).

Carrillo argues that video evidence and screen shots show Officer Rich's explanation for the stop is not credible. Officer Rich testified that he noticed Carrillo's malfunctioning break light in his side mirror as he passed her. Carrillo argues that this testimony is implausible because Officer Rich applied the brakes on his cruiser just before he passed Carrillo and immediately began to turn around to stop Carrillo. This evidence, according to Carrillo, shows Officer Rich intended to stop Carrillo before he passed her vehicle and observed the malfunctioning brake light.

3

Although Defense Exhibits 102 and 103 show that Officer Rich applied the cruiser's brakes, Officer Rich explained that during routine patrols, he applied the brakes of his cruiser for several reasons. These reasons include slowing down to see any potential violations of the law including drug transactions or the plates of passing vehicles. Tr. 23. These explanations for applying the brakes are plausible and suggest Officer Rich did not determine to stop Carrillo's vehicle before seeing her malfunctioning brake light.

Carrillo also argues that Exhibit 105 shows Officer Rich began his turn to stop her vehicle only one second after passing the vehicle. Specifically, Carrillo argues that Exhibit 105 shows the cruiser "angling to the right, preparing for a U-turn." Def. Br. at 4, ECF No. 44. Exhibit 105 depicts the following:



The Court cannot conclude from this image that Officer Rich was preparing to make a U-turn, let alone that his testimony was implausible.

4

Carrillo further argues that Rich admitted he began to turn his vehicle only one second after passing Carrillo. However, this was not Rich's testimony. At the evidentiary hearing, counsel for Carrillo asked Officer Rich if Exhibit 105 shows that he was beginning his turn to stop Carrillo's vehicle. Officer Rich responded, "It looks like, in this photo, the vehicle had already passed me, yes." Tr. 30. Although Officer Rich answered in the affirmative, his explanation suggests that his answer was not directly responsive to counsel's question. Rich confirms that Carrillo had passed him but does not confirm that he began his turn. The Court cannot conclude, based on this evidence, that Officer Rich's testimony is so implausible that a reasonable fact-finder would not credit the testimony.

## II. Stop Justified at its Inception

"A traffic violation, no matter how minor, creates probable cause for a law enforcement officer to stop [a] vehicle." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009). "[I]f an officer has reasonable suspicion or probable cause to stop for a traffic violation, 'any ulterior motivation on the officer's part is irrelevant.'" *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2107 (2017). "Reasonable suspicion is 'a particularized and objective basis for suspecting the particular person stopped of breaking the law.'" *Id.* (quoting *Heien v. North Carolina*, 135 S. Ct. 530, 536, (2014)). A stop may be justified by reasonable suspicion even where an officer makes a mistake of law, so long as the mistake is reasonable. *Heien*, 135 S. Ct. at 536; *see also United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006) ("In our circuit, if an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is evaluated based on whether the mistake

5

of law was an 'objectively reasonable one.'"). The Court must determine whether Officer Rich made a mistake of law and, if he did, whether his actions were objectively reasonable.

### A. Mistake of Law

Under Nebraska law, any vehicle used for carrying passengers or freight "shall be equipped with brake and turnsignal lights in good working order." Neb. Rev. Stat. § 60-6,226(1). Officer Rich stopped Carrillo because Carrillo's top-mount brake light was not working, even though the bottom brake lights worked. Officer Rich interpreted the term "in good working order" to mean that all brake lights on a vehicle must be working. Carrillo argues that the term brake "lights" in the plural form, it requires only that at least two brake lights be functional.

It is not clear in this case that Officer Rich's interpretation of § 60-6,226(1) was mistaken. The plain language of the statute could require all brake lights on a vehicle to be functional, or could require that a vehicle have at least two brake lights working. Therefore, unlike the Nebraska statute at issue in *Washington*, the plain language of § 60-6,226(1) is not determinative. See 455 F.3d at 826-27 (concluding officer misinterpreted Neb. Rev. Stat. §§ 60-6,256 by assuming that it applied to cracks in windshield when plain language of the statute only applied to physical obstructions to driver's view). Because the language of the statute is ambiguous, the Court cannot conclude that Officer Rich's interpretation was erroneous.

### B. Objective Reasonableness

Where a statute is ambiguous, a court considers several factors that "would be relevant to the objective reasonableness of the officer's belief: 'the drafting history of the

6

Code, prior enforcement of the Code's provision concerning "stop lights," the training of police concerning the requirements of the Code, or previous judicial interpretations of the "stop lights" provision.'" *Washington*, 455 F.3d at 827 (quoting *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005)). Officer Rich testified that he learned in the police academy that all brake lights need to work on a vehicle, and he was aware of other officers who conducted traffic stops based on non-functioning top-mount brake lights. Tr. 10. Thus, the training and prior-enforcement factors support Officer Rich's objective reasonableness.

Nebraska appellate courts have not previously interpreted the statute and, where no previous judicial opinions have examined a traffic law, courts look to the reasonableness of the officer's interpretation. *See* 135 S. Ct. at 540. Yet Carrillo argues that the language of the statute and its drafting history render Officer Rich's actions unreasonable. She first argues that the plain meaning of the plural term "lights" means that two or more lights must be functioning. Carrillo also argues that language in another statute sheds light on the legislature's intent. Section 60-6,219(6)(b) requires that "each taillight" on a vehicle show red directly to the rear. Carrillo asserts that when the Nebraska legislature last revised § 60-6,226, it could have required "each" brake light to be operational rather than use the broader term "lights." The fact that it did not, according to Carrillo, signifies that a different standard applies to brake lights.

The Court is not persuaded that the plain language or comparative statute render Officer Rich's actions objectively unreasonable. The Eighth Circuit has interpreted statutes with similar ambiguities and concluded that an officer's actions were reasonable. In *Martin*, an officer stopped a car for violating an Oglala Sioux tribal code provision that

stated: "STOP LIGHTS: All motor vehicles shall be equipped with a stop light in good working order at all times. Such stop lights to be automatically controlled by brake adjustment." *Martin*, 411 F.3d at 1001. The defendant argued that the officer's interpretation of the code was unreasonable because the language required only that a vehicle had "a stop light in good working order." *Id*. The Eighth Circuit concluded that the officer's interpretation was not objectively unreasonable because the language of the code was ambiguous and "[t]he requirement common to States in the region is that *all brake lights* on a vehicle like Martin's must be in good working order." *Id*. (emphasis added). Significantly, the Eighth Circuit cited several states whose statutes require that all brake lights on a vehicle be in good working order, including Neb. Rev. Stat. § § 60-6,226 (2003). The relevant language of § 60-6,226 in effect in 2003 is identical to the language as it appears in the current version of the statute. This is precisely the interpretation that Officer Rich used to initiate the stop.

Having weighed the factors against the evidence in the record, the Court concludes that Officer Rich's interpretation of § 60-6,226(1) and actions in stopping Carrillo were objectively reasonable.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation, ECF No. 38, are adopted in their entirety;

2. The Motion to Suppress filed by Defendant Giavana Carrillo, ECF No. 20, is denied;

3. The Objection to the Findings and Recommendation, ECF No. 43, is overruled; and

4. The Clerk of Court is directed to terminate the Government's response to the Objection at ECF No. 45.

Dated this 14th day of January, 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge